**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO**

| | |
|---|---|
| Jenniffer Casillas Guardiola,<br><br>          Plaintiff,<br><br>               v.<br><br>Bayer Puerto Rico, Inc., XYZ<br>Insurance Corporation,<br><br>          Defendants. | **Civil No. 22-1167 (GMM)** |

<u>**OPINION AND ORDER**</u>

Pending before the Court are nonparties Ana Faría Jové ("Faría") and Two Amigas, LLC's ("Two Amigas") *Motion to Quash and For Protective Order and Request for Attorney Fees* (Docket No. 39), and Two Amigas' *Motion to Quash and For Protective Order and Request for Attorney Fees* (Docket No. 40) (together, "Motions to Quash"). Defendant Bayer Puerto Rico Inc. ("Bayer" or "Defendant") duly opposed. (Docket No. 50). In turn, Faría and Two Amigas replied to the opposition filed by Bayer. (Docket No. 53). After considering the filings, the Court **GRANTS** the Motions to Quash.

**I.   BACKGROUND RELEVANT TO THE MOTIONS TO QUASH**

A.   <u>Casillas' Allegations</u>

On April 8, 2022, Plaintiff Jenniffer Casillas Guardiola ("Casillas" or "Plaintiff") filed a Complaint[1] against Bayer. She

---

[1] On June 15, 2021, Casillas filed a Charge of Discrimination against Bayer before the Equal Employment Opportunity Commission ("EEOC"). She alleged the same discriminatory and retaliatory acts listed in the Complaint. (Docket No. ¶ 6). On January 14, 2022, the EEOC issued a Notice of Right to Sue. (<u>Id.</u> ¶ 7).

alleged that she was a victim of pregnancy and sex discrimination, retaliation, and wrongful termination in violation of federal and state civil rights statutes. (Docket No. 1). Specifically, Casillas sustains that Bayer violated Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000(e) et seq. and Puerto Rico Acts No. 3 of March 13, 1942, as amended, P.R. Laws Ann. tit. 29 § 467 et seq.; No. 69 of July 6, 1985, as amended, P.R. Laws Ann. tit. 29 § 1321 et seq.; and No. 100 of May 30, 1976, as amended, P.R. Laws Ann. tit. 29 § 185 et seq. (Id.). Casillas also seeks redress pursuant to the Consolidated Omnibus Reconciliation Act, 29 U.S.C. §§ 1161-1169 ("COBRA"), the Puerto Rico Civil Code of 2020, P.R. Laws Ann. tit. 31 § 10801, and Act No. 80 of May 30, 1976, as amended, P.R. Laws Ann. tit. 29 § 185a et seq.

The Court summarizes Casillas' allegations in the Complaint as follows: on October 11, 2011, Casillas began working at Merck Consumer Care ("Merck"). (Docket No. 1 ¶ 16). On October 2014, Bayer acquired the consumer division of Merck. As such, Merck employees were interviewed by Bayer personnel and were selected if their merits and qualifications warranted it. (Id. ¶ 17). Casillas was selected for a position in the Marketing Department with Bayer; her functions, salary, and benefits changed, but she retained her seniority date with Merk. (Id. ¶¶ 18-19).

---

Casillas needed to file the Complaint within 90 days; she did. (Id. ¶ 8). As such, Casillas claims that the administrative proceedings were properly exhausted.

On October 2, 2020, Bayer announced the implementation of a process called "Thrive". Its purpose was investing more resources in new roles and technology. No information was provided regarding any reduction in force to be carried out in Puerto Rico. (Id. ¶ 21). Shortly thereafter, on October 13, 2020, Casillas informed her supervisor that she was pregnant. (Id. ¶ 22).

On November 19, 2020, Bayer provided information regarding changes in its operations' workforce and presented a new organizational chart; no changes were reflected as to Puerto Rico's workforce. (Id. ¶ 23). Casillas alleges that her supervisor indicated that she had no knowledge of any changes that would be made to Puerto Rico's workforce. (Docket No. 1 ¶ 24). Furthermore, Casillas received an email regarding an order for a new company car to be assigned to her for the year 2021. (Id. ¶ 25).

On December 11, 2020, Bayer announced that the restructuring process had been completed. (Id. ¶ 26).

On January 22, 2021, Casillas alleges she had a meeting scheduled to discuss her annual performance with her supervisor, and to her surprise, someone from the Human Resources ("HR") Department was present. (Id. ¶ 28). There, she alleges, the HR employee informed her that the purpose of the meeting was to discuss her termination with Bayer. (Id. ¶ 29).

Casillas further alleges that the HR employee informed her that she was terminated due to corporate changes and budget constraints. (Id. ¶ 30). Around the time of Casillas' termination, she and another employee, Ms. Bilmarie Williams ("Williams"), occupied the same position in the Marketing Department. (Docket No. 1 ¶ 31). Casillas alleges that she had a better performance record than Williams. (Id. ¶ 31). But, Williams, unlike Casillas, was not pregnant. (Id.). Thus, Casillas concludes that she was terminated by Bayer due to her pregnancy. (Id. ¶ 32).

At the time of her termination, Casillas was seven (7) months pregnant. (Id. ¶ 33).

Casillas was offered a severance package subject to the execution of a waiver and release, and Casillas' agreement to remain working with Bayer for 30 days. (Id. ¶ 35). The proposed package included pay for 60 days, and a 12-week severance pay. (Id. ¶ 37). Plaintiff alleges she did not receive a notice as to her COBRA rights. (Docket No. 1 ¶ 40.). Also, she alleges that little information was provided to her as to her benefits and compensation, even after repeated requests, which caused her great anxiety. (Id. ¶ 48).

Casillas also asserts to have experienced "episodes of high pressure and premature contractions". (Id. ¶ 49). Casillas alleges that she could not search for a new employment as she was seven-months pregnant, with the possibility of going into labor at any

time. (Id. ¶ 50). As a result, this caused great anxiety to Casillas, her health deteriorated, and she suffered high blood pressure. (Id. ¶¶ 50, 52).

Casillas went into labor at the 38th week of pregnancy with preeclampsia, a pregnancy complication characterized by high blood pressure and signs of damage to another organ system. (Id. ¶ 52). Casillas was subjected to an emergency C-section due to immediate concern for her health and her baby's health. (Docket No. 1 ¶ 54). Unfortunately, Casillas' baby was born with a heart murmur. (Id. ¶ 56).

Upon losing her job at Bayer, Casillas lost her medical coverage which meant that she had to incur in approximately $7,000 in expenses related to childbirth, prenatal and postnatal care, and other medical expenses. (Id. ¶ 69).

Leaving aside her pregnancy, her deteriorating health, and the health of her baby, Casillas alleges that she suffered economic loss and financial hardship because of her termination at Bayer. (Id. ¶ 60). Casillas' alleged dire economic situation caused her and her husband to place their house for sale and moving with her in-laws. (Id. ¶¶ 61, 63-64).

Finally, Casillas argues that Bayer's discriminatory and unjustified actions caused her great damages and losses. (Id. ¶ 73).

Civil No. 22-1167 (GMM)
Page -6-

B.   Rule 45 Subpoenas on FirstBank Puerto Rico and Ana Faría Jové

On October 16, 2023, Bayer served two subpoenas: one on Faría and another on FirstBank Puerto Rico ("FirstBank"). As to Faría, the subpoena commands her to testify at a deposition and to produce certain documents. Specifically, the subpoena asks Faría to produce:

1.   Any and all documents or communications that relate to the formation of Two Amigas including, but not limited, to its operating agreement.

2.   Any and all documents that relate to the capital contributions made by the owners, members and/or partners of Two Amigas.

3.   Any and all documents that relate to the lease, purchase and/or sale of any real estate property by Two Amigas including, but not limited to the lease agreements, deed(s) of purchase and sale, and the mortgage deed(s).

4.   Any and all documents that relate to the purchase and/or sale of any real estate property by Two Amigas including, but not limited, to the deed(s) of purchase and sale, and the mortgage deed(s) of the real estate property located at Ashford Towers, Apt. 6A in Condado.

5.   Any and all documents and communications that relate to Casillas' financial information which were submitted by Two Amigas in support of its application to obtain a mortgage loan for the purchase of a real estate property located in Ashford Towers No. 6A.

6.   Any and all documents that relate to any payment, salary, dividend, distribution and/or disbursement that Two Amigas has made to Casillas.

7.   Any and all documents that relate to the financial information of Two Amigas including, but not

Civil No. 22-1167 (GMM)
Page -7-

> limited to, financial records, bank statements, general ledger and internal account records.

(Docket No. 39-1 at 8-9). Regarding FirstBank, Bayer seeks the

production of:

1. Any and all documents that relate to the accounts held by Two Amigas, including but not limited to any financial records, bank statements, applications, forms, designations, checks, receipts, withdrawals, deposits, transfers, credit reports, loans, mortgages, notices (electronic or written) and internal account records.

2. Any and all documents that relate to the authorized signatories for Two Amigas for any account held by that entity.

3. Any and all documents and communications that relate to Casillas' financial information which were submitted by Two Amigas in support of its application to obtain a mortgage loan for the purchase of a real estate property located in Ashford Towers No. 6A.

4. Any and all documents and communications that relate to Casillas' financial information which were submitted by Two Amigas LLC in support of its application to obtain a mortgage loan for the purchase of any real estate property.

(Docket No. 40-1 at 8).

The subpoenas prompted Faría and Two Amigas to file their

Motions to Quash. (Docket Nos. 39; 40).

C. Faría and Two Amigas' Motion to Quash

On October 30, 2023, Faría and Two Amigas filed their motion

to quash the subpoena served on Faría and requested a protective

order to preclude Bayer from taking Faría's deposition and

procuring the production of documents. (Docket No. 39). According

to Faría and Two Amigas, the subpoena must be quashed because of the following reasons:

1. The subpoena's failure to comply with Federal Rule of Civil Procedure 45 ("Rule 45").

Faría and Two Amigas posit that the subpoena was incorrectly addressed to Faría, since she is not in control or possession of the information sought; the documentation sought belongs to Two Amigas, a separate legal entity. Further, the subpoena does not include the required language of Rule 45(d) and (e). (Docket No. 39 at 1-2).

2. Bayer's request is irrelevant.

According to Faría and Two Amigas, they have no relation to Casillas' employment with Bayer. Two Amigas was created six months after Casillas termination occurred. Additionally, there is not a single allegation in the Complaint or in Bayer's answer to the Complaint, that is remotely related to Faría or Two Amigas. (Id. at 7). Thus, Faría and Two Amigas argue that their testimony and financial information is irrelevant to the case. (Id. at 7-9.).

3. Undue burden placed on Faría.

According to Faría, she has the same relation to Two Amigas as Casillas, since they are both members and authorized persons. So, Faría posits that the only reason to subject her to a deposition and to produce Two Amigas' financial information is to intimidate, harass and annoy. (Id. at 8).

4.  The documentation requested is confidential.

Lastly, Faría and Two Amigas argue that the requested documentation from Two Amigas is confidential. (Id. at 9). To wit, Bayer is requesting Two Amigas' operating agreement, capital contributions, documents relating to purchase and sale of real estate property, lease agreements, mortgage deeds, financial information of Two Amigas' members, etc. (Id.).

D.   Two Amigas' Motion to Quash

Likewise, on October 30, 2023, Two Amigas filed its motion to quash the subpoena served on FirstBank and requested a protective order forbidding the disclosure of the documents requested in the subpoena. (Docket No. 40). In essence, Two Amigas objects the subpoena served on FirstBank for the same reasons it objects the subpoena addressed to Faría.

E.   Bayer's Opposition to the Motions to Quash ("Opposition")

On November 10, 2023, Bayer jointly opposed the Motions to Quash. (Docket No. 50). According to Bayer, the relevancy of the information sought lies in its relation to Casillas' claim for damages. (Id. at 7) ("the Subpoenas are directed solely to obtain information concerning Plaintiff's alleged financial hardship and her claim for damages and *not* concerning the reasons for her employment termination."). Furthermore, Bayer argues that Faría

and Two Amigas failed to show that the information requested is privileged and confidential.

## F. Faría and Two Amigas' Reply to Bayer's Opposition ("Reply")

On November 17, 2023, Faría and Two Amigas filed their Reply to Bayer's Opposition to the Motions to Quash. (Docket No. 53). There, Faría and Two Amigas reiterated that the information and documents requested by Bayer are irrelevant since Two Amigas' financial information "could in no possible way shed light as to the economic hardships that Plaintiff faced as a result of the termination." (Id. at 4). Further, Two Amigas was created several months after Casillas' employment termination. In any case, Faría and Two Amigas argue that if what Bayer is truly seeking is Casillas' financial information, it can request such information from Casillas. (Id. at 3).

## II.   APPLICABLE LAW

### A. Fed. R. Civ. P. 26 and Fed. R. Civ. P. 45

Federal Rule of Civil Procedure 26 ("Rule 26") decrees that:

> [p]arties may obtain discovery regarding any non-privileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

Fed. R. Civ. P. 26(b)(1). What is "relevant" encompasses "any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." Oppenheimer Fund, Inc. v. Sanders, 437 U.S. 340, 351 (1978); *see also* Torres-Román v. Martínez-Ocasio, Civil No. 21-1621 (GMM), 2023 WL 8372045, at *4 (D.P.R. Dec. 1, 2023). "It is well settled that: [t]he party resisting production bears the burden of establishing lack of relevancy or undue burden. . .[T]he 'mere statement by a party that the interrogatory [or request for production] was 'overly broad, burdensome, oppressive and irrelevant' is not adequate to voice a successful objection." Aponte-Navedo v. Nalco Chemical Co., 268 F.R.D. 31, 36 (D.P.R. 2010) (*quoting* Sánchez-Medina v. UNICCO Serv. Co., 265 F.R.D. 24, 27 (D.P.R. 2009). The courts must limit discovery if they determine that "the discovery sought is unreasonably cumulative or duplicative, or **can be obtained from some other source that is more convenient, less burdensome, or less expensive**." Fed. R. Civ. P. 26(b)(2)(C)(i) (emphasis added); *see also* Ameristar Jet Charter, Inc. v. Signal Composites, Inc., 244 F.3d 189, 193 (1st Cir. 2001); Puerto Rico Aqueduct and Sewer Authority v. Clow Corp., 108 F.R.D. 304, 312 (D.P.R. 1985).

A party who seeks discovery from a nonparty must serve the nonparty with a subpoena pursuant to Fed. R. Civ. P. 45 ("Rule 45"). *See* Vázquez-Fernández v. Cambridge Coll., Inc., 269 F.R.D.

150, 165 (D.P.R. 2010). "A Rule 45 subpoena is subject to the scope of discoverable information set forth in [Rule 26(b)(1)]." Puerto Rico Ports Authority v. P/V Norwegian Epic, Civil No. 21-1056 (RAM), 2022 WL 2704477, at *2 (D.P.R. July 12, 2022) (*citing* Smith v. Turbocombustor Tech., Inc., 338 F.R.D. 174, 176 (D. Mass. 2021).

Furthermore, Rule 45(d)(3)(B)(i) dictates that courts may "quash or modify the subpoena if it requires. . .disclosing a trade secret or other confidential research, development, or commercial information[.]" Alternatively, "the court may, instead of quashing or modifying a subpoena. . .[order] production under specified conditions if the serving party: (i) shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship. . ." Fed. R. Civ. P. 45(d)(3)(C)(i).

Lastly, Fed. R. Civ. P. 26(c)(1) provides that "[a] party or any person from whom discovery is sought may move for a protective order in the court where the action is pending. . .[and] [t]he court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense. . ." Fed. R. Civ. P. 26(c)(1). A movant has the burden of demonstrating that good cause exists for the issuance of the protective order. *See* Public Citizen v. Liggett Group, Inc., 858 F.2d 775, 789 (1st Cir. 1988). To meet this burden, the movant must provide the Court with "a particular and specific demonstration of fact" and not merely "stereotyped and conclusory

statements." Equal Employment Opportunity Commission v. BDO USA, L.L.P., 876 F.3d 690, 698 (5th Cir. 2017) (*quoting* In re Terra Int'l, 134 F.3d 302, 306 (5th Cir. 1998)); *see also* González Berrios v. Mennonite General Hospital, Inc., Civil No. 18-1146 (RAM), 2019 WL 4785701 at *2 (D.P.R. Sept. 30, 2019).

### III.   ANALYSIS

### A.   Failure to Include the Text of Subdivisions (d) and (e)

Foremost, the Court will address Bayer's failure to include the text of Rule 45(d) and (e) in the subpoenas notified to FirstBank and Faría. Rule 45 governs the form of a subpoena and includes a provision that every subpoena <u>must</u> "set out the text of Rule 45(d) and (e). *See* Fed. R. Civ. P. 45(d)-(e). Subdivisions (d) and (e) ensure that the recipient of the subpoena is fully aware of their available options in contesting a subpoena and their duty in responding to the same. *See* Id. Although Rule 45 dictates that every subpoena must include the text of subdivision (d) and (e), it does not require a Court to quash a subpoena that fails to include the text.

Indeed, some courts in similar situations have refused to quash subpoenas that failed to include the text of Rule 45(d) and (e). *See* Elam v. Ryder Automotive Operations, Inc., 179 F.R.D. 413, 415 (W.D.N.Y. 1998); Harris ex rel. Beare v. Millington, Civil No. 2007-3391 (TLM) (MDG), 2012 WL 2906017, at *1 (E.D.N.Y. July

16, 2012); <u>Bartz v. Wal-Mart Stores, Inc.</u>, Civil No. 14-3353 (TSH), 2015 WL 1968837, *1 (C.D. Ill. May 1, 2015) ("Absent some prejudice, the Court will not quash the subpoena [for failure to include the text of Rule 45(d) and (e)]."); *but see* <u>Goodwin v. Hughes</u>, No. 4:19CV3114 (RGK), 2022 WL 1156318, at *2 (D. Neb. Apr. 19, 2022); <u>Finley v. Count of Martin</u>, No. C-07-5922 EMC, 2009 WL 3320263, at *1 (N.D. Cal. Oct. 13, 2009); <u>Anderson v. Gov't of the V.I.</u>, 180 F.R.D. 284, 290 (D.Vi. 1998). Absent a showing of prejudice for failure to include the text of Rule 45(d) and (e), this Court will not "elevate form over substance. . ." *See* <u>Elam</u>, 179 F.R.D. at 415. Quashing the subpoenas on this ground would lead to their reissuance. That is to say that the Court would simply be kicking the can down the road, since Faría and Two Amigas would again object on relevancy grounds.[2] The Court will not quash the subpoenas for failure to include the text of Rule 45(d) and (e).

B.   <u>The Information Sought by Bayer is Reasonably in Casillas' Possession</u>

Fed. R. Civ. P. 26(b)(2) requires this Court to limit discovery when it "can be obtained from some other source that is more convenient, less burdensome, or less expensive." Furthermore, if obtaining the information requested puts a significant burden

---

[2] This would also be the case if the Court were to quash the subpoena addressed to Faría based, solely, on it being incorrectly addressed to her instead of Two Amigas.

Civil No. 22-1167 (GMM)
Page -15-

on the nonparty, then courts have the power to modify or quash the subpoena. *See* Heidelberg Americas, Inc. v. Tokyo Kikai Seisakusho, Ltd., 333 F.3d 38, 41 (1st Cir. 2003). Notably, much of the information Bayer is seeking can reasonably be obtained from Casillas. To wit, the following request for productions fall under this category.

Regarding the subpoena addressed to FirstBank:

Request for Production No. 3

Any and all documents and communications that relate to Casillas' financial information which were submitted by Two Amigas in support of its application to obtain a mortgage loan for the purchase of a real estate property located in Ashford Towers No. 6A.

Request for Production No. 4

Any and all documents and communications that relate to Casillas' financial information which were submitted by Two Amigas LLC in support of its application to obtain a mortgage loan for the purchase of any real estate property.

Regarding the subpoena addressed to Faría:

Request for Production No. 2

Any and all documents that relate to the capital contributions made by the owners, members and/or partners of Two Amigas.[3]

Request for Production No. 5

Any and all documents and communications that relate to Casillas' financial information which were submitted by Two Amigas in support of its application to obtain a

---

[3] The Court finds that this request should be limited to Casillas and addressed to her directly. This finding is made without prejudice to Casillas right to raise any objection that she may have.

mortgage loan for the purchase of a real estate property located in Ashford Towers No. 6A.

Request for Production No. 6

Any and all documents that relate to any payment, salary, dividend, distribution and/or disbursement that Two Amigas has made to Casillas.

To date, Bayer has not shown that it has tried to discover the financial information in question directly from Plaintiff and through less burdensome methods. It appears Bayer is trying to circumvent Casillas by going directly to nonparties Faría and FirstBank. "Although discovery is by definition invasive, parties to a lawsuit must accept its travails as a natural concomitant of modern civil litigation. Non-parties have a different set of expectations." Cusumano v. Microsoft Corp., 162 F.3d 708, 717 (1st. Cir. 1998). Accordingly, concern for the unwanted burden thrust upon nonparties is a factor entitled to special weight in evaluating the balance of competing needs for discovery. *See* Cascade Yarns, Inc. v. Knitting Fever, Inc., 755 F.3d 55, 59 (1st Cir. 2014). With this in mind, pursuant to Fed. R. Civ. P. 26(b)(2)(C)(i), the Court can and will require Bayer to first seek any financial information regarding Casillas' participation in Two Amigas from her directly, without prejudice of any objection that Casillas may have. *See* Haworth, Inc. v. Herman Miller, Inc., 998 F.2d 975, 978 (Fed. Cir. 1993); *see also* Moon v. SCP Pool Corp., 232 F.R.D. 633, 638 (C.D. Cal. 2005) (quashing a subpoena that sought information from a nonparty that pertained to a party since

the movant could more easily and inexpensively obtain the documents
from the party itself). Therefore, at this juncture, the requests
listed above, and the taking of Faría's deposition, are quashed.

C.   Relevancy of the Subpoenas

As part of her allegations, Casillas claimed that she suffered
financial hardship because of the unlawful termination of her
employment. (Docket No. 1 ¶¶ 60,69, 63-64, 73). In this sense,
Bayer argues that the subpoenas issued to Faría and FirstBank:

> **are directed solely to obtain information concerning
> Plaintiff's alleged financial hardship and her claim for
> damages and *not* concerning the reasons for her
> employment termination.** In view of the above,
> Plaintiff's financial information is clearly relevant
> and fair game here."

(Docket No. 50 at 7) (emphasis in original).

Now, Two Amigas was founded by Casillas and Faría and was
incorporated as a limited liability company on July 16, 2021.
(Docket Nos. 53-1 ¶ 3; 39-2; 49-1). That is, months after Casillas'
employment at Bayer was terminated. According to Bayer, Two Amigas
purchased a real estate property on October 5, 2021, or 166 days
after Casillas' employment was terminated by Bayer, presumably
with the capital contributions made by Casillas and Faría. (Docket
No. 49-2). Bayer's reasoning is that if Casillas had the money to
buy real estate, then she can hardly argue financial hardship, or,
at the very least, the financial hardship was not as bad as
Casillas is making it out to be.

Civil No. 22-1167 (GMM)
Page -18-

Assuming that Bayer's reasoning holds water, the subpoenas notified to Faría and FirstBank go beyond Casillas' financial information, and are thus, irrelevant. Particularly, the subpoenas attempt to discover information and documentation belonging to and or pertaining to Two Amigas and Faría, and not Casillas, who is the party in this case. To that extent, the subpoenas served on Faría and FirstBank fail to meet the proportionality burden of Rule 26(b)(1).

As to FirstBank, the following requests for production are quashed since they are irrelevant. That is, they do not bear on, or reasonably could lead to other matter that could bear on, any issue that is or may be in the case:

Request for Production No. 1

Any and all documents that relate to the accounts held by Two Amigas, including but not limited to any financial records, bank statements, applications, forms, designations, checks, receipts, withdrawals, deposits, transfers, credit reports, loans, mortgages, notices (electronic or written) and internal account records.

Request for Production No. 2

Any and all documents that relate to the authorized signatories for Two Amigas for any account held by that entity.

As to Faría, the following requests for production are quashed since they are irrelevant. That is, they do not bear on, or reasonably could lead to other matter that could bear on, any issue that is or may be in the case:

Request for Production No. 1

Any and all documents or communications that relate to
the formation of Two Amigas including, but not limited,
to its operating agreement.

Request for Production No. 3

Any and all documents that relate to the lease, purchase
and/or sale of any real estate property by Two Amigas
including, but not limited to the lease agreements,
deed(s) of purchase and sale, and the mortgage deed(s).

Request for Production No. 4

Any and all documents that relate to the purchase and/or
sale of any real estate property by Two Amigas including,
but not limited, to the deed(s) of purchase and sale,
and the mortgage deed(s) of the real estate property
located at Ashford Towers, Apt. 6A in Condado.

Request for Production No. 7

Any and all documents that relate to the financial
information of Two Amigas including, but not limited to,
financial records, bank statements, general ledger and
internal account records.

## IV.   CONCLUSION[4]

For the foregoing reasons, nonparties Two Amigas' and Faría's

Motions to Quash are hereby **GRANTED,** and the subpoenas notified to

Faría and FirstBank **QUASHED.**

IT IS SO ORDERED.

In San Juan, Puerto Rico, February 15, 2024.

s/Gina R. Méndez-Miró
GINA R. MÉNDEZ-MIRÓ
UNITED STATES DISTRICT JUDGE

---

[4] Because the Court quashes the subpoenas addressed to Faría and Two Amigas on
other grounds, the Court will not address whether the information requested is
confidential or privileged.